**Joseph P. CONNORS, Sr., et al., Plaintiff,**

**v.**

**ISLAND CREEK COAL COMPANY, et al., Defendant.**

**Joseph P. CONNORS, Sr., et al., Plaintiff,**

**v.**

**ARCH OF ILLINOIS, INC., Defendant.**

**Joseph P. CONNORS, Sr., et al., Plaintiff,**

**v.**

**EASTERN COAL COMPANY, et al., Defendant.**

**Joseph P. CONNORS, Sr., et al., Plaintiff,**

**v.**

**TANOMA MINING COMPANY, INC., Defendant.**

Civ. A. Nos. 86–0299, 86–1316, 87–2495 and 90–0257.

United States District Court, District of Columbia.

Dec. 28, 1990.

**8**

Stephen J. Pollock, Wendy S. White, Shea & Gardner, Washington, D.C., for Trustees of United Mine Workers of America Health and Retirement Funds.

David W. Allen, for trustees.

Jonathan D. Schiller, Randal S. Milch, Rogovin, Huge & Schiller, Washington, D.C., for Island Creek Coal Company.

John R. Woodrum, Smith, Heenan & Althen, Washington, D.C., for Arch of Illinois, Inc.

John M. Wood, Reed, Smith, Shaw & McClay, Washington, D.C., Eugene E. Andereck, Stockard, Andereck, Hauck, Sharp & Evans, Springfield, Mo., for Associated Electric Cooperative (AEIC).

Ellen Efros, Vorys, Sater, Seymour & Pease, Washington, D.C., for Tanoma Mining Company.

John J. Range, Hunton & Williams, Washington, D.C., for Eastern Coal Corporation, Clinchfield Coal Company, Buffalo Mining Corporation, Elkay Mining Corporation, Ranger Fuel Corporation and Sea "B" Mining Corporation (the Pittston Companies).

### MEMORANDUM AND ORDER

REVERCOMB, District Judge.

The plaintiffs, Joseph P. Connors, Sr., *et al.*, ("Trustees"), brought these actions against the defendants, Arch of Illinois, Inc. ("Arch"), the Island Creek Coal Company ("Island Creek"), Eastern Coal Corporation, Clinchfield Coal Company, Buffalo Mining Corporation, Elkay Mining Corporation, Ranger Fuel Corporation and Sea "B" Mining Corporation (the "Pittston Companies"), Associated Electric Cooperative, Inc. ("Associated"), and Tanoma Mining Company ("Tanoma"). Each of these defendants has entered into or adopted the National Bituminous Coal Wage Agreement.

In 1946, the International Union, United Mine Workers of America ("UMWA") and J.A. Drug, Coal Mines Administrator for the Federal Government, entered into a labor agreement, known as the "Krug–Lewis Agreement," which created the UMWA Welfare and Retirement Fund. This Fund was supported by contributions from signatory employers based upon cents "per ton on each ton of coal produced for use or for sale." This "tonnage contribu-

tion" provision has remained virtually unchanged from 1946 through the terms of the 1984 Agreement. Under this provision, signatory coal producers are required to pay a royalty to the Funds, which is calculated by multiplying a prescribed amount of cents per ton by the total number of tons of coal. This provision in the 1981 and 1984 National Bituminous Coal Wage Agreement ("Agreement"), Article XX, states:

**(d) Contributions by Employers**

(1) During the life of this Agreement, for the periods of time indicated below, each signatory Employer engaged in the production of coal shall contribute to the Trusts referred to in this Article the amounts specified below based on cents per ton on each ton of two thousand (2,000) pounds of bituminous coal produced by such Employer for use or for sale ...

All bituminous coal contains "inherent moisture," which is moisture present in the coal when in the ground and when removed from the ground by mine workers. After the coal is mined, however, it can acquire additional "excess moisture" from exposure to the elements or during washing and preparation.

On October 24, 1985, the Trustees issued a Special Notice to all signatories of the Agreement, which announced that contributions based on excess moisture deductions were "contrary to the terms of the Coal Wage Agreement and inconsistent with the Funds' policy of not permitting deductions for added moisture or other impurities which may be found in the coal product."

In this case, the Trustees contend that the tonnage contribution provision, Article XX, required the defendants, signatory employers, to make contributions to the Funds based upon the actual weight of the coal produced by the employer for use or for sale, without reduction for "excess moisture." The Trustees allege that in the past, each of the defendants in this litigation calculated its tonnage contributions consistent with the Trustees' interpretation of the Agreement and paid on the actual

weight of coal produced, without deducting for excess moisture. The Trustees further allege, that with a limited exception for certain employers in Alabama, it had always been the industry-wide practice nationally to calculate tonnage contributions without reduction for excess moisture. The Trustees brought these actions to enforce their claim that extraneous moisture should be included in Article XX(d) contribution calculations.

The defendants argue that, under the terms of Article XX(d) of the Agreement, their monthly tonnage-based contributions to the Funds should be based on the weight of the coal produced, and not on the weight attributable to extraneous moisture.

*Procedural History*

Two weeks after the Trustees filed this suit, A.J. Taft Coal Company ("Taft") brought suit in the Northern District of Alabama on behalf of a class of all Alabama coal producers who had been permitted to take deductions for excess moisture in calculating contributions due to the Funds, challenging the Trustees' interpretation of the National Agreement as applied to Alabama companies. *A.J. Taft Coal Co. v. Connors*, C.A. No. CV86–H–245–S (N.D.Ala. filed February 13, 1986). The Trustees filed a counterclaim requesting that Taft be ordered to calculate tonnage contributions without deduction of excess moisture.

On April 22, 1986, pursuant to a stipulation, this Court ordered the Trustees' claims against Drummond Company, Inc. ("Drummond") and Alabama By–Products Corporation ("ABC"), both Alabama coal producers severed from *Connors v. Island Creek*, C.A. No. 86–0299, transferred to the Northern District of Alabama so that the proceedings respecting those two companies could be consolidated with *Taft*. The litigation in the present case was stayed on December 15, 1986 pending the decision of the Eleventh Circuit in the *Taft* case.

On April 5, 1989, the District Court in *Taft* issued its Memorandum of Decision, holding that the Alabama producers could calculate tonnage contributions to the Funds by reducing the actual weight of the coal produced by an amount representing "excess moisture." The Court based its

decision on three grounds. First, the Court held that "the terms of the [National Bituminous Coal Wage Agreement] do not include 'extraneous moisture' within the definition of the word 'coal.' " Second, the Court stated that "the trustees have essentially waived their right to construe the contract to include extraneous moisture because they have long accepted the producers' practice." Third, the Court held that, given the Alabama past practice, the Trustees' interpretation of the tonnage contribution provision of the National Agreement was "arbitrary and capricious."

In affirming the District Court, the Eleventh Circuit only reached the first issue, and held that " 'excess moisture' is not included within the meaning of the term 'coal' as used in the NBCWA." The Court of Appeals stated that in reading the Agreement, " 'coal' means 'coal' and it is not an ambiguous term," and that the "words 'coal product' do not appear in Article XX of the NBCWA."

In the present case, the defendants have filed a Motion for Summary Judgment on the issue of collateral estoppel, alleging that the issue before this Court, the meaning of the term "coal" in the Article XX provision, has been fully litigated and decided against the Trustees in *A.J. Taft Coal, Inc. v. Connors*, 906 F.2d 539 (11th Cir.1990).

The Trustees oppose the motion, claiming that the issue before this Court is different from the issue litigated in the Eleventh Circuit because the defendants in this litigation have never been permitted to take a deduction in the past and, until learning of the Alabama practice, never sought to do so. Thus, the plaintiffs argue, the issue in this case is factually distinct from the issue in *Taft* and the meaning of the National Agreement as applied to non-Alabama producers was not "actually and necessarily determined" by the Court in *Taft*. In addition, the Trustees argue that application of the collateral estoppel doctrine would be unfair in this case.

Upon consideration of the Defendants' Motion for Summary Judgment, the Plaintiffs' Opposition, the Defendants' Reply, and oral argument, it is

**10**

ORDERED that the Defendants' Motion for Summary Judgment is GRANTED.

*Collateral Estoppel*

 The doctrine of collateral estoppel provides that "once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude re-litigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980). The standard for applying collateral estoppel principles in the District of Columbia are articulated in *Otherson v. Department of Justice, I.N.S.*, 711 F.2d 267, 273 (D.C.Cir.1983):

> First, the issue must have been actually litigated, that is, contested by the parties and submitted for determination by the court.
> Second, the issue must have been actually and necessarily determined by a court of competent jurisdiction in the first trial.
> Third, preclusion in the second trial must not work an unfairness.

Each of these factors has been met in this case. Therefore, the doctrine of collateral estoppel dictates that summary judgment must be granted.

> A. The same issue in this case was fully litigated in Taft

The issue in this case is identical to the issue presented to and determined by the Eleventh Circuit: whether excess moisture comes within the definition of the word "coal" as it exists in the Article XX(d) language "coal produced .. for use or for sale."

The plaintiffs argue that the factual context of this case differs from that of the *Taft* case because the Alabama Coal Companies in *Taft* had taken deductions for excess moisture in the past, and it was not the nationwide practice to do so. However, the factual differences between *Taft* and this case were absolutely irrelevant to the contract interpretation made by the district court and affirmed by the Eleventh Circuit.

 In a contract claim, a court must first look to the plain language of a collective bargaining agreement in order to reach an interpretation. *See United Steel Workers of America v. Enterprise Wheel*

*& Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). Only when the collectively bargained language is ambiguous may a court look to extrinsic evidence, such as custom or practice, to clarify the meaning of an agreement. *See Anderson v. Alpha Portland Industries, Inc.*, 836 F.2d 1512, 1517 (8th Cir.1988), *cert. denied, Anderson v. Slattery Group, Inc.*, 489 U.S. 1051, 109 S.Ct. 1310, 103 L.Ed.2d 579 (1989).

The Eleventh Circuit decided it was unnecessary to look towards extrinsic evidence, such as the custom of the industry, because the language of the contract was unambiguous. " 'Coal' means 'coal' and it is not an ambiguous term." *Taft*, 906 F.2d at 544. The Eleventh Circuit rejected the Trustees' invitation to look to the nationwide practices of coal companies because "[t]he matter of how third parties calculate their tonnage contributions is irrelevant." *Id.*

The *Taft* court's refusal to review evidence of practice in the construction of an unambiguous term in a collective bargaining agreement simply follows well-accepted rules of contract construction. The Eleventh Circuit found it was unnecessary to look beyond the contract to evidence of custom or practice. Therefore, any factual differences between the Alabama producers' practices and those of the defendants are irrelevant to the applicability of the *Taft* decisions to this case.

The issue of the meaning of "coal" in the Article XX provision was fully litigated by the parties in the *Taft* case. The Trustees spent nearly four years vigorously litigating the meaning of the term "coal." Initially, the Alabama District Court estopped the Funds from enforcing their interpretation of Article XX(d) based on the decision in *Combs v. Sun–Up Coal Co.* The Eleventh Circuit reversed, finding that the *Sun–Up* case had not provided the Trustees with an adequate incentive to litigate the issues. The case was remanded back to the trial court for a determination on the merits. The trial court based its second decision on a substantial record generated by the parties, which included an agreed

statement of facts, affidavits, depositions, and exhibits. Based on this record, the District Court explicitly found that the terms of the Agreement do not include extraneous moisture within the definition of the word "coal." The issue was subsequently argued before the Eleventh Circuit. In light of the extensive record provided to the Alabama District Court and the Court of Appeals, the Trustees had, and in fact took, a full opportunity to litigate the excess moisture issue.

B. The excess moisture issue was "actually and necessarily" determined by the eleventh circuit

The Eleventh Circuit's thorough review and affirmation of the Alabama District court's holding that excess moisture is not a part of "coal" as used in Article XX(d) was necessary to the outcome of *Taft* and essential to that judgment. The excess moisture issue was posed to the Court of Appeals by the Trustees, and it is the sole issue that court decided.

The plaintiffs argue that the application of the tonnage contribution provision to signatories outside Alabama was not necessarily determined by the *Taft* court because that ruling was limited to the application of the tonnage contribution provision to companies producing coal in Alabama where the deduction had been taken and not contested by the Trustees. However, as discussed earlier, the Eleventh Circuit's decision was based upon the plain language of the Agreement, and, therefore, any extrinsic evidence, such as the difference between the practices of Alabama companies and other countries nation-wide was irrelevant.

The Trustees have provided this Court with no authority in support of their contention that the defendants have failed to show that the extraneous moisture issue was necessarily determined by the *Taft* courts. While the *Taft* District Court found three reasons to permit the moisture deduction, the Eleventh Circuit found it necessary only to reach the contract interpretation issue to affirm the lower court. This sort of selective appellate confirma-

tion fully meets the "necessarily determined" requirement. Restatement 2d. of Judgments § 27 comment *o*.

C. The application of collateral estoppel would not be unfair

The application of collateral estoppel would not be unfair as the Trustees were parties in the *Taft* case and had both a full and fair opportunity, and the incentive, to argue the issue of the meaning of the term "coal" in Article XX of the Agreement.

The plaintiffs contend that the *Taft* decision is inconsistent with the decisions in *Drummond Coal Co. v. Hodel*, 796 F.2d 503 (D.C.Cir.1986), *Lewis v. Kerns*, 175 F.Supp. 115 (S.D.Ind.1959), and *Combs v. Hawk Contracting, Inc.*, 543 F.Supp. 825 (W.D.Pa.1982), and, therefore, this Court should not rely on the *Taft* holding. However, none of the cases are inconsistent with the decisions in *Taft*, nor would they shake this Court's confidence in the accuracy of the *Taft* courts' holding. *See Jack Faucett Associates, Inc. v. American Tel. & Tel. Co.*, 744 F.2d 118, 129 (D.C.Cir.1984), *cert. denied*, 469 U.S. 1196, 105 S.Ct. 980, 83 L.Ed.2d 982 (1985).

*Drummond Coal Co. v. Hodel* concerned the validity of the Secretary of the Interior's promulgation of a regulation not a contract, and the Secretary has amended the regulation upheld in *Drummond* to allow the moisture deduction that was approved in *Taft*. *Lewis v. Kerns* and *Combs v. Hawk Contracting, Inc.* each concerned "bugdust" or ash found in the coal that the producers mined. Unlike excess moisture which is absorbed by the coal following production, bugdust and ash are part of the "production" of the mine. Therefore, these cases do not undermine this Court's confidence in the Eleventh's Circuit opinion.

In addition, any unfairness arising from prior inconsistent adjudications is the special concern of offensive collateral estoppel. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 330, 99 S.Ct. 645, 651, 58 L.Ed.2d 552 (1979). The defendants here seek to use collateral estoppel as a shield, not a sword, and the concern over prior inconsistent adjudications is not applicable to a de-

**12**

fensive effort. *See Jack Faucett,* 744 F.2d at 129–130.

There is no unfairness in using collateral estoppel in this instance. The Trustees were afforded, and in fact used, every opportunity in *Taft* to litigate the question of contract interpretation before this Court. The *Taft* court interpreted a national agreement, which public policy dictates should be interpreted uniformly. Thus, the Trustees will not suffer any unfairness from the use of collateral estoppel.

For the foregoing reasons, the Defendants' Motion for Summary Judgment is GRANTED and the cases are dismissed.