**Joseph P. CONNORS, Sr., as Trustee of the United Mine Workers of America 1950 Pension Trustee, et al., Appellants,**

**v.**

**TANOMA MINING COMPANY, INC., Eastern Coal Corporation, et al., Alabama By–Products Corporation, et al., Arch of Illinois, Inc., Appellees.**

Nos. 91–7028, 91–7036, 91–7037 and 91–7038.

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 13, 1991.

Decided Jan. 28, 1992.

Wendy S. White, with whom Stephen J. Pollak and David W. Allen, Washington, D.C., were on the brief for appellants in 91–7028, 91–7036, 91–7037, and 91–7038.

Jonathan D. Schiller, with whom Randal S. Milch, Washington, D.C., for Island Creek Coal Co., Thomas A. Smock, David J. Laurent, Pittsburgh, Pa., and Ellen A. Efros, Washington, D.C., for Tanoma Mining Co., Inc., John J. Range, Washington, D.C., for Eastern Coal Corp., et al., and John M. Wood, Washington, D.C., for Associated Elec. Co-op., Inc., John R. Woodrum and William K. Doran, for Arch of Illinois, Inc., were on the joint brief for appellees in 91–7028, 91–7036, 91–7037, and 91–7038.

Before BUCKLEY, WILLIAMS, and D.H. GINSBURG, Circuit Judges.

Opinion for the Court filed by Circuit Judge D.H. GINSBURG.

D.H. GINSBURG, Circuit Judge:

The trustees of the United Mine Workers of America Health and Retirement Funds appeal an order of the district court precluding them from relitigating the meaning of Article XX of the 1984 National Bituminous Coal Wage Agreement and entering summary judgment in favor of the defendant coal producers. Because issue preclusion was not appropriate, we vacate the judgment and remand the case for further proceedings.

## I. BACKGROUND

The facts, viewed in the light most favorable to the party opposing summary judgment, *see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513–14, 91 L.Ed.2d 202 (1986), are as follows. In 1946 the Secretary of the Interior (and acting Coal Mines Administrator) and the President of the United Mine Workers of America signed an agreement establishing health and retirement funds for mine workers. The 1984 version of that agreement, in terms hardly changed since 1946, requires each signatory employer to contribute to the funds a prescribed number of "cents per ton on each ton ... of bituminous coal produced by such Employer for use or for sale." 1984 Agreement, Article XX(d)(1).

Producers generally include the weight of any excess moisture (*i.e.*, moisture that is not a part of the coal in its natural state) in the weight of the coal they sell. In the mid–1950s, however, Alabama producers began to deduct the weight of excess moisture in computing the tonnage upon which they based their contributions to the funds. The funds' auditors acquiesced in this practice in Alabama, but outside of Alabama it long remained uniform industry practice (with minor exceptions) to calculate tonnage contributions without deducting for excess moisture.

Producers in other states began deducting for excess moisture in the 1980s. When the trustees learned of this in 1985, they notified all signatory employers, both inside and outside of Alabama, of their position that:

> [s]uch deductions are contrary to the terms of the ... Agreement and inconsistent with the Funds' policy of not permitting deductions for added moisture or other impurities which may be found in the coal product.... [T]he calculation of tonnage contributions due to the Funds must be based upon the actual weight of the coal product without regard to the moisture content of the coal.

Nonetheless, some producers continued to take deductions for excess moisture.

In January 1986 the trustees brought the present suit in the District of Columbia against a Kentucky producer (appellee Island Creek Coal Company) and two Alabama producers. Shortly thereafter another Alabama producer (A.J. Taft Coal Company) filed a suit in the Northern District of Alabama seeking declarative relief

684

against the trustees on behalf of all Alabama producers. The trustees sought to transfer the *Taft* case from Alabama to the District of Columbia, but the Alabama district court denied their motion; the court reasoned that because Alabama producers alone had been allowed for many years to deduct the weight of excess moisture, the Alabama producers had raised "an issue unique to them." *A.J. Taft Coal, Inc. v. Connors,* No. CV86–H–0245–S, at 2 (N.D.Ala. Mar. 10, 1986).

The District of Columbia district court then (pursuant to a stipulation by the parties) transferred the trustees' case against the two Alabama producers to the Northern District of Alabama for consolidation with the *Taft* litigation. The trustees agreed to stay their remaining action here (against the Kentucky producer) pending the resolution of the Alabama litigation. While the action here was stayed, the trustees added Pennsylvania, Illinois, West Virginia, and Missouri producers as defendants.

Eventually, the district court in Alabama entered judgment in favor of the Alabama producers, *A.J. Taft Coal, Inc. v. Connors,* No. CV86–H–0245–S (N.D.Ala. Apr. 5, 1989), and the Eleventh Circuit affirmed, *A.J. Taft Coal, Inc. v. Connors,* 906 F.2d 539 (11th Cir.1990). The district court here then held that the trustees were precluded from relitigating the meaning of the contribution provision in Article XX and entered summary judgment in favor of the defendant producers. *Connors v. Island Creek Coal Co.,* 756 F.Supp. 7 (D.D.C.1990). The trustees appeal.

## II. ANALYSIS

■ A party that has once litigated a factual or legal issue and lost may be precluded from relitigating the same issue in a subsequent proceeding, *see Montana v. United States,* 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979); *Blonder-Tongue Lab. v. University of Ill. Found.,* 402 U.S. 313, 324, 91 S.Ct. 1434, 1440, 28 L.Ed.2d 788 (1971), if three conditions are met:

First, the issue must have been actually litigated, that is, contested by the parties and submitted for determination by the court. Second, the issue must have been *actually and necessarily* determined by a court of competent jurisdiction in the first trial. Third, preclusion in the second trial must not work an unfairness. *Otherson v. INS,* 711 F.2d 267, 273 (D.C.Cir.1983) (citations and internal quotations omitted) (emphasis added). Here, the trustees argue that none of the three conditions is met, but we find no merit in the trustees' contentions with regard to the first and third conditions. Accordingly, we attend below only to the second condition.

■ The second condition implicitly requires that the issue in the present suit be "in substance the same" as that decided in the Alabama litigation. *Montana v. United States,* 440 U.S. at 155, 99 S.Ct. at 974–75; *see also Schneider v. Lockheed Aircraft Corp.,* 658 F.2d 835, 852 (D.C.Cir. 1981) ("substantially the same"); *cf. Gould v. Mossinghoff,* 711 F.2d 396, 399 (D.C.Cir. 1983) ("identical"). Whether the second condition is met is a question of law, which we address *de novo. See, e.g., In re McWhorter,* 887 F.2d 1564, 1566 (11th Cir. 1989); *Davis & Cox v. Summa Corp.,* 751 F.2d 1507, 1519 (9th Cir.1985); *cf. Jack Faucett Assocs. v. AT & T,* 744 F.2d 118, 126 (D.C.Cir.1984) (third condition reviewed for abuse of discretion).

■ The party seeking to preclude relitigation of an issue has the burden of showing that the same issue was "actually and necessarily determined" in a prior litigation. *See Ottley v. Sheepshead Nursing Home,* 784 F.2d 62, 65 (2d Cir.1986); 18 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 4420, at 185 (1981). If the basis of the Alabama decision is unclear, and it is thus uncertain whether the issue was actually and necessarily decided in that litigation, then relitigation of the issue is not precluded. *See, e.g., In re Real Estate Title and Settlement Servs. Antitrust Litig.,* 869 F.2d 760, 764 n. 1 (3d Cir.1989); *Fay v. South Colonie Cent. Sch. Dist.,* 802 F.2d 21, 30 (2d Cir.1986); *see also* 18 Wright & Miller,

§ 4420, at 184 (an "opaque judgment fails to preclude relitigation").

In the Alabama litigation, the producers argued that they were entitled to deduct the weight of excess moisture in calculating their contributions to the funds either because (1) the plain meaning of the word "coal" in Article XX of the 1984 Agreement unambiguously excludes excess moisture, or because (2) the unique course of dealing between the Alabama producers and the trustees establishes that the parties to the 1984 Agreement did not intend the word "coal" to include excess moisture in Alabama coal. Therefore, in order to determine the scope of the preclusive effect to be accorded the Alabama decision, we must first establish which of the producers' arguments the Eleventh Circuit accepted: If that court relied upon the plain meaning of Article XX, then it resolved the same issue that is in dispute in this litigation; if the Eleventh Circuit accepted the course-of-dealing argument, then it resolved a different issue, *viz.*, the application of Article XX to Alabama producers.

In support of their position that the Eleventh Circuit accepted the plain meaning argument, the producers point to the court's declaration that: " 'Coal' means 'coal' and it is not an ambiguous term." 906 F.2d at 544. Perhaps so, but if the Eleventh Circuit relied upon the plain meaning of Article XX, then one would expect its determination that the contract is unambiguous to have concluded the matter. *See Eatmon v. Bristol Steel & Iron Works,* 769 F.2d 1503, 1518 (11th Cir.1985) ("A contract's meaning is to be determined by its language, without resort to extrinisic considerations, unless the language is ambiguous"); *Consolidated Gas Transmission Corp. v. FERC,* 771 F.2d 1536, 1544 (D.C.Cir.1985) ("If a contract is not ambiguous, extrinisic evidence cannot be used as an aid to interpretation"); *cf.* 3 A. Corbin, *Corbin on Contracts* § 542, at 109–10 (rev. ed. 1960) (under plain meaning rule, extrinsic evidence "is admissible only when the words of the writing are themselves 'ambiguous' ").

In fact, however, as the trustees point out, the Eleventh Circuit reached its "coal means coal" conclusion only by considering the bargaining history of the 1946 Agreement, 906 F.2d at 544, and the course of dealing between the parties:

> The Trustees assert further that since the [Agreement] is a national wage agreement, we should look to the practices of thousands of other coal producers who are not before this court to ascertain the meaning of "coal ... produced for use or for sale." We reject this invitation, since the matter of how third parties calculate their tonnage contributions is irrelevant. The course of dealing between the parties who are before us suggests that extraneous moisture is not included within the word "coal."

*Id.* Indeed, the court's reliance upon "[t]he course of dealing between the parties who are before us," *i.e.*, the trustees and the Alabama producers, at the very least suggests that the Eleventh Circuit's analysis rests not upon the plain meaning of Article XX but upon its application to the unique situation in Alabama. *Cf. Anderson v. Alpha Portland Indus.,* 836 F.2d 1512, 1517 (8th Cir.1988) ("Because the district court considered extrinsic evidence, we will assume the court found the language in the documents ambiguous"). Recall, too, the district court's reason for denying the trustees' preliminary motion to transfer the litigation to the District of Columbia—that the Alabama producers had raised "an issue unique to them." *A.J. Taft Coal, Inc. v. Connors,* No. CV86–H–0245–S, at 2 (N.D.Ala. Mar. 10, 1986).

In any event, whether the Eleventh Circuit opinion rests upon the plain meaning of Article XX or upon the unique practice of the Alabama producers depends upon where one looks. Because, in the Eleventh Circuit's view, both arguments pointed toward a judgment for the Alabama producers, the court had no reason to choose between them. As a result, the precise legal basis upon which the judgment rests is unclear: The Alabama decision may or may not establish the meaning of Article XX outside of Alabama.

In view of this lingering uncertainty, we cannot say that the producers have dis-

charged their burden of showing that the Eleventh Circuit "actually and necessarily" resolved the issue that the trustees have raised in this case. The district court erred, therefore, in precluding the trustees from litigating the meaning of Article XX outside of Alabama.

### III. Conclusion

For the foregoing reason, the summary judgment entered in favor of the producers is vacated and the case is remanded for further proceedings.

*So ordered.*