STATE of TEXAS, et al., Plaintiffs,

v.

UNITED STATES of America,
et al., Defendants.

Civ. A. No. 91–2383.

United States District Court,
District of Columbia.

July 27, 1992.
Final Judgment Sept. 17, 1992.

Dan Morales, Atty. Gen., Will Pryor, First Asst. Atty. Gen., Mary F. Keller, Deputy Atty. Gen., Renea Hicks, Sp. Asst. Atty. Gen. in charge, Javier Guajardo, Sp. Asst. Atty. Gen. (Richard E. Gray, III, Gray & Becker, David R. Richards, Richards, Wiseman & Durst, of counsel), Austin, Tex., for plaintiffs.

John R. Dunne, Asst. Atty. Gen., Gerald W. Jones, Steven H. Rosenbaum, David B. Marblestone, Attys., Voting Section, Civ. Rights Div., Dept. of Justice, Washington, D.C., for defendants.

John N. McCamish, Jr., J. Patrick Deely, San Antonio, Tex. (Jonathan David Pauerstein, Kevin M. Warburton, McCamish, Martin and Loeffler, P.C., of counsel), for intervenors Louis Terrazas, Tom Craddick, Ernest Angelo, Jr., Robert A. Estrada and Sim D. Stokes, III.

Jose Garza, George Korbel, Texas Rural Legal Aid, Inc., Judith Sanders–Castro, Mexican American Legal Defense and Educational Fund, San Antonio, Tex., James C.

Harrington, Texas Civ. Rights Project, Austin, Tex., G. Mario Moreno, Mexican American Legal Defense and Educational Fund, Washington, D.C., for intervenors Negrete, et al.

Before WALD, Circuit Judge, and JOYCE HENS GREEN and SPORKIN, District Judges.

## MEMORANDUM OPINION

The State of Texas filed this suit seeking relief under section 5 of the Voting Rights Act of 1965, 42 U.S.C. § 1973c (1988) ("section 5"). It originally asked this Court to preclear four of its newly enacted reapportionment plans. Questions involving preclearance for the plans governing elections to the Texas House, the Texas Board of Education and the United States Congress have since been resolved. Only the reapportionment plan for the Texas Senate remains at issue.

Reapportionment for the Texas Senate has been the subject of extensive litigation in both state and federal courts. *See Texas v. United States*, 785 F.Supp. 201, 202–203 (D.D.C.1992). Several plans have been proposed or adopted by the legislature and the courts in the course of these lawsuits; however, this Court has previously determined that only two are relevant to this case. The first is the plan that Texas is asking this Court to preclear: SB 1 which was enacted by a special session of the state legislature on January 8, 1992. The second is the plan that will serve as the benchmark for a section 5 preclearance

analysis: the "Terrazas" plan which was ordered into effect for the primary elections by a three-judge federal court in Texas on December 24, 1991. *See id.*

On July 10, 1992, the State of Texas filed a motion for summary judgment asking the Court to declare SB 1 precleared. It also filed a motion to reconsider the order granting permissive intervention to Louis Terrazas, Tom Craddick, Ernest Angelo, and Robert A. Estrada ("Terrazas intervenors")[1] and a motion for judgment on the pleadings. The Terrazas intervenors simultaneously filed their own motion for summary judgment asking the Court to declare that SB 1 is not entitled to preclearance. Responses were filed on July 24, 1992. The Court has considered the arguments of all the parties and is now prepared to rule on the motions.

## I. SUMMARY JUDGMENT

Summary judgment may be granted where the Court finds that there is no genuine issue of material fact left to be resolved. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(c). Neither the moving party nor the opponent is required to submit affidavits or to point to other materials in the case to demonstrate that no genuine issue of material fact exists. However, a summary judgment motion may not be opposed by "the mere pleadings themselves." *Celotex Corp.*, 477 U.S. at 324, 106 S.Ct. at 2553.

All parties agree, with one exception,[2] that there is no genuine issue of material

---

**1.** On March 19, 1992, the Court issued an order permitting two sets of individuals to intervene in the case pursuant to Fed.R.Civ.P. 24(b) "subject to further order of this Court." *Texas v. United States*, Civ. No. 91–2383, Order (Mar. 19, 1992). Austin Negrete and eight other individuals ("Negrete intervenors") comprise the first set. They favor preclearance of SB 1. The Terrazas intervenors are the second set. They oppose preclearance of SB 1.

The State of Texas has filed a motion to reconsider the Rule 24(b) intervention for the Terrazas intervenors. As noted by the United States, the Terrazas intervenors have only raised an issue of law in their motion for summary judgment and in their opposition to Texas's motion for summary judgment. Memorandum of

the United States in Response to Plaintiff's Motion for Reconsideration of Rule 24(b) Intervention Order and for Judgment on the Pleadings, 1–2. Hence, their continued presence in the case will not result in any undue delay in reaching a final adjudication on the merits. Texas's motion to reconsider the intervention will be denied.

**2.** The State of Texas opposes the summary judgment motion of the Terrazas intervenors on the grounds that there is a material question of fact on the issue of whether SB 1 violates section 2. We disagree with the State that an issue of fact is raised; rather we see it as an issue of law whether the Texas court's decision established that SB 1 is a violation of section 2 at all. This will be discussed *infra* at 483–85.

fact in dispute in this case. *See* Responses of Defendant–Intervenors Louis Terrazas, *et al.,* to Motions of Plaintiff State of Texas, 9; Defendant–Intervenor Negrete's Response to Plaintiff's Motion for Summary Judgment, 3; Memorandum of the United States in Response to Plaintiff's Motion for Summary Judgment, 1–2; Texas' Opposition to Terrazas Intervenors' Motion for Summary Judgment, 1 n. 2. However, they disagree over the relevance of particular facts. The Terrazas intervenors have not submitted any supporting materials in conjunction with their motion for summary judgment nor have they filed a statement of material facts which are not in issue as required by the local rules of this Court. *See* Local Rule 108(h). Instead, the Terrazas intervenors merely state in their motion, "There is no genuine issue of material fact necessary to establish that SB 1 is not entitled to section 5 preclearance." They also oppose the State of Texas' motion for summary judgment on purely legal grounds. The Terrazas intervenors have staked their position entirely on the legal claim that this Court is bound by a statement of the three-judge court in *Terrazas v. Slagle,* Nos. 91–425, 91–426 (W.D.Tex., Jan. 10, 1992) declaring SB 1 in violation of section 2 of the Voting Rights Act. In sum, they argue that facts pertaining to the relative merits of SB 1 and the Terrazas plan are not material because the Court is legally compelled to conclude that SB 1 cannot meet the standards for preclearance.

The State of Texas does believe that there are material facts which must be found in order to grant judgment in its favor, but it believes those facts are not in dispute. In support of its motion for summary judgment, the State of Texas has submitted affidavits from experts attesting to the ability of their plan to meet the standards for section 5 preclearance. The United States has filed papers stating that it does not oppose Texas' motion for summary judgment; the Negrete intervenors have filed in support of it. No party has filed any affidavits or pointed to any interrogatories, documents or other factual items in the record to contest Texas' state-

ment of facts. The Court will address both motions simultaneously because they present the same legal questions.

A. *Legal Significance of the Statement by the Terrazas Court*

On January 10, 1992, the *Terrazas* three-judge court issued an opinion denying a motion by the defendants in that case to modify or stay the judgment of December 24, 1991 ordering the court's own reapportionment plan into effect. Judge Garwood dissented. Near the end of the majority's opinion, the following statement appears:

> Until formal comment on the substitute Senate plan ... has been made by the Department of Justice, elections cannot proceed under the Legislature's proposed plan as scheduled under current state law. Alternatively, should the opinion of the Department of Justice issue in the next few days, the Court has already reviewed testimony and other evidence on the Senate's substitute plan during the December hearings and finds it fails to satisfy the Sec. 2 requirements of the Voting Rights Act. *Terrazas v. Slagle,* Nos. 91–425, 91–426, sl. op. at 12 (W.D.Tex. Jan. 10, 1992).

The Terrazas intervenors claim that this Court is bound by this statement under the doctrine of collateral estoppel. *See Connors v. Tanoma Mining Co.,* 953 F.2d 682, 684 (D.C.Cir.1992); *United States v. Sherman,* 912 F.2d 907, 909 (7th Cir.1990). The Court rejects this contention on several grounds.

Collateral estoppel applies where four conditions are met:

(1) There is identity of issues between the first and second proceedings.

(2) The issue was fully litigated in the first proceeding.

(3) The issue was essential to resolving the case in the first proceeding.

(4) The party against whom the earlier ruling is being applied was fully represented in the first proceeding.

Two of the four prerequisites are wholly missing in this case. The contingent and gratuitous statement by the *Terrazas* ma-

jority does not rise to the level of full adjudication on the merits of the section 2 validity of SB 1. The issue was not litigated in the *Terrazas* case. The three-judge court in Texas held a preliminary injunction hearing during which it reviewed the validity of the previously enacted plan, SB 31, not SB 1. In fact, the *Terrazas* court explicitly stated in its December 24, 1991 opinion that it did *not* consider the Quiroz/Mena plan, the substantive equivalent of SB 1, because at that time it had been declared procedurally invalid by the Texas Supreme Court.[3] *Terrazas v. Slagle*, Nos. 91–425, 91–426, sl. op. at 6–7 (Dec. 24, 1991). There was no full and fair adjudication of the merits of SB 1 or its identical predecessor, the Quiroz/Mena plan.

Indeed the "facts" that are cited in the January 10 opinion do not go to the question of section 2 viability at all, rather they concern section 5 issues. The *Terrazas* court compares 'ts plan to the Quiroz/Mena plan, substantively the same as SB 1, and concludes that its plan provides a "greater opportunity" for minority citizens to elect representatives of their choosing. Sl. op. at 5, and that "minority voting rights can be enhanced to a greater degree than provided in a *Quiroz*-style plan." Sl. op. at 9. It claims that SB 1 is "an impermissibly partisan reaction to this Court's superior interim plan." Sl. op. at 6. None of these observations support the conclusion that SB 1 violates section 2. They only support the *Terrazas* court's conclusion that its plan is superior to the plan chosen by the Texas legislature.

Moreover, the January 10 statement declaring that SB 1 violates section 2 was not essential to a resolution of the issues raised in that case. At that point, the only question for the *Terrazas* court to decide was whether it should stay implementation of its own plan and allow the state to proceed with the preclearance process for SB 1 or instead require that the primary elections be held under the court-crafted plan. The court's statement about the Texas legislature's plan was posed "in the alternative" and was contingent upon an event that had not yet occurred. In deciding whether to stay the implementation of its own court-crafted plan, the Court did not need to consider whether SB 1 violated section 2. Judge Garwood made this point in his dissent where he suggested that the court stay implementation of its own plan, await a preclearance decision from the Department of Justice, and consider the section 2 issue only after SB 1 was precleared. The section 2 question would have been moot if the Department of Justice refused to preclear SB 1. The *Terrazas* majority itself says that its principal concern is delay and that "[I]t does not appear that preclearance of *any* substitute plans can be obtained in a timely fashion so as to allow the 1992 primaries to proceed in March as provided by existing state law." *Terrazas v. Slagle*, Nos. 91–425, 91–426, sl. op. at 10 (W.D.Tex. Jan. 10, 1992). In sum, there was no need for the *Terrazas* court to rule on the section 2 issue in order to decide whether to stay the implementation of the court-ordered electoral plan.

■■■ The Terrazas intervenors also claim that the Supreme Court affirmed the section 2 statement by the *Terrazas* majority when it granted summary affirmance in the appeal filed by the State of Texas. They argue that Supreme Court affirmance made the decision of the *Terrazas* court including its.... sentence about SB 1 final and of "sufficient firmness to be accorded conclusive effect." Motion for Summary Judgment of Defendant–Intervenors Louis Terrazas, *et al.*, 4, *citing Interconnect Planning Corp. v. Feil*, 774 F.2d 1132, 1135 (Fed.Cir.1985). But, as the Department of Justice points out persuasively in its motion opposing summary judgment for the Terrazas plaintiffs, the Supreme Court did not affirm any specific statements of the *Terrazas* court.

---

**3.** The parties agree that SB 1 and the Quiroz/Mena plan are substantively identical. The Quiroz/Mena plan was ordered into place by a Texas state court. The Texas Supreme Court then ruled that it was procedurally invalid. The

Texas legislature then met in special session in the first week of January, 1992, in order to enact the Quiroz/Mena plan so that it would be legally effective.

A summary disposition affirms only the judgment of the court below, and no more may be read into [the Supreme Court's] action than was essential to sustain that judgment. Statement of the United States Concerning Effect of Supreme Court Action *citing Anderson v. Celebrezze,* 460 U.S. 780, 785 n. 5, 103 S.Ct. 1564, 1568 n. 5, 75 L.Ed.2d 547 (1983).

A summary affirmance decides only the precise questions presented on appeal. *See Mandel v. Bradley,* 432 U.S. 173, 176, 97 S.Ct. 2238, 2240, 53 L.Ed.2d 199 (1977). Given the questions presented in the appeal from the *Terrazas* decision,[4] the summary affirmance verifies only that the *Terrazas* court was correct in granting a stay under the circumstances that existed on January 10, i.e. before the newly legislated plan, SB 1, had been precleared and at a time when it appeared that waiting for preclearance would cause delay harmful to the electoral process.

Under the doctrine of collateral estoppel, this Court is not bound by the statement of the *Terrazas* court in its January 10 opinion declaring that SB 1 violates section 2. The issue was not fully litigated by the *Terrazas* court, and a decision on the section 2 question was not essential to the issue that court had to resolve in its January 10 opinion. When making decisions about the validity of legislative policies under the Voting Rights Act, courts are required to make detailed factual findings. As the Fifth Circuit itself has said,

> Because the resolution of a voting dilution claim requires close analysis of unusually complex factual patterns, and because the decision of such a case has the potential for serious interference with

state functions, we have strictly adhered to the rule 52(a) requirements in voting dilution cases and have required district courts to explain with particularity their reasoning and the subsidiary factual conclusions underlying their reasoning. *Cross v. Baxter,* 604 F.2d 875, 879 (5th Cir.1979) (citations omitted), *vacated on other grounds,* 704 F.2d 143 (5th Cir. 1983); *see also Westwego Citizens for Better Government v. Westwego,* 872 F.2d 1201, 1203 (5th Cir.1989); *Velasquez v. City of Abilene,* 725 F.2d 1017, 1020 (5th Cir.1984).

In our view, the *Terrazas* majority did not adhere to this directive. It made a blanket statement without factual underpinnings or explanation about the section 2 invalidity of SB 1. While expressing clearly its preference for its own plan over the plan enacted by the legislature the Terrazas court failed to substantiate in any way its legal objections to the legislature's plan, instead relying principally on practical considerations like delay in reaching its decision.[5] Thus, we must take the statement for what it is worth, in its context and barren of specific factual findings.[6] Since the Terrazas intervenors stake their motion for summary judgment entirely on the proposition that the Court is bound by the Terrazas court's statement that SB 1 violates section 2, their motion fails by necessity and, accordingly, will be denied.

### B. *Preclearance of SB 1*

 In order to grant preclearance to a reapportionment plan a court must make two findings. First, the plan may not be retrogressive in terms of minority voting rights when compared to the plan that would be in effect were the plan in question not approved. *See Beer v. United*

---

**4.** The jurisdictional statement filed by the State of Texas presented the following questions:

 1. May a local three-judge federal district court acting under section 5 of the Voting Rights Act substitute a court-crafted redistricting plan for a legislatively approved plan that obtained section 5 preclearance from the United States Department of Justice?

 2. Does preclearance from the United States Department of Justice establish prima facie validity of a redistricting plan so as to preclude interim injunctive relief under section 2

of the Voting Rights Act absent extreme and unique circumstances?

**5.** The Fifth Circuit has also made clear that legislatively enacted plans are preferable to court-imposed plans except in the most unusual of circumstances. *See Seastrunk v. Burns,* 772 F.2d 143 (5th Cir.1985).

**6.** We note also that Judge Nowlin has since recused himself from any further participation in the case.

*States,* 425 U.S. 130, 141, 96 S.Ct. 1357, 1363, 47 L.Ed.2d 629 (1976). As noted above, SB 1 is the plan in question, and the plan that would be in effect, the benchmark, is the *Terrazas* plan. *See Texas v. United States,* 785 F.Supp. 201 (D.D.C. 1992). Second, discriminatory purpose may not be a motivating factor in the selection of the plan. *See City of Richmond v. United States,* 422 U.S. 358, 378, 95 S.Ct. 2296, 2307, 45 L.Ed.2d 245 (1975). As an initial matter, we note that the Department of Justice has posed no objection to SB 1. *See* Memorandum of the United States in Response to Plaintiff's Motion for Summary Judgment (July 24, 1992). Were it not for the presence of the intervenors in this litigation, there would be no dispute. However, given the unusual posture of this case, the Court will proceed to rule on Texas' motion.

The State of Texas has submitted detailed affidavits to prove that SB 1 meets the nonretrogression standard. Lynn Moak and Allan Lichtman are both experts in data analysis and redistricting. Mr. Moak performed a thorough comparison of SB 1 and the *Terrazas* plan. Mr. Lichtman then verified the accuracy and reliability of Mr. Moak's work. Mr. Moak concluded that SB 1 increases the number of districts in which minorities can elect candidates of their own choosing from eight to nine. It creates an additional Hispanic district as compared to the *Terrazas* plan. Review of recent primary election voting data also revealed "major differences ... in the pattern of Black and Hispanic support." Affidavit of Lynn Moak, Motion for Summary Judgment, 3. He concluded that because of this phenomenon "mixed minority" districts would not actually work and could not be considered minority districts. As a result, two of the districts identified in the *Terrazas* plan as minority districts and one of the districts identified in SB 1 as a minority district failed to qualify as minori-

ty districts under the standards of Mr. Moak's analysis. In District 13 in Harris County, SB 1's version does have a reduced African–American voting age population, however, Mr. Moak's regression model indicates that African–American voters will still be able to elect representatives of their choice. Also, the modifications in District 13 allow for the creation of District 6 which will be a Hispanic district and allow for the possibility that District 15 may also become an African–American district.

Having reviewed Mr. Moak's work as well as the affidavit of Professor Lichtman who confirms that Mr. Moak's methodology is well-grounded in the literature and consistent with the methodology he uses in work for the Department of Justice, the Court credits these statements and adopts Mr. Moak's affidavit as its findings of fact.

As for the question of discriminatory purpose, Texas has submitted the affidavits of seven state senators and representatives who participated in the creation and passage of SB 1.[7] Six of these officeholders are themselves African American or Hispanic. The seventh is the Dean of the Texas Senate. All of these individuals gave sworn statements affirming that there was no discriminatory purpose behind SB 1. All of them note that SB 1 is endorsed by the majority minority organizations[8] in Texas. The Court credits these statements and finds that there is no discriminatory purpose underlying SB 1.

The Terrazas intervenors, the only remaining party that opposes Texas' motion for summary judgment, have not filed any affidavits or other materials to raise a genuine issue of material fact. They rest on the same legal argument that they made in their own motion for summary judgment and point only to the statement of the *Terrazas* court in its January 10 opinion as the basis for their claim that there is a genuine triable issue concerning motive re-

---

7. The individuals submitting affidavits are Senator Gonzalo Barrientos, Senator Chet Brooks, Senator Rodney Ellis, Senator Eddie Bernice Johnson, Senator Judith Zaffirini, Representative Eddie Cavazos, and Representative Roman Martinez.

8. As the phrase implies, a "majority minority organization" is one where the majority of the members of the organization are also members of a minority group. The NAACP would be an example.

maining in this case. The Court has already rejected this argument. We are not bound by the Terrazas court's statement, and it does not, without more, raise a genuine issue of material fact. The statement of the *Terrazas* court is conclusory only, and it is not accompanied by any specific references to testimony, evidence or personal knowledge. *See* Memorandum of the United States in Response to Motion for Summary Judgment of Defendant–Intervenors Terrazas, *et al.*, 6 n. 3. Texas has offered the carefully researched opinion of experts, and the Terrazas intervenors have presented neither witnesses nor documents that would be able to contradict them.

Accordingly, the Court will grant Texas' motion for summary judgment and will grant preclearance to SB 1 under section 5 of the Voting Rights Act.

### FINAL JUDGMENT

It is this 17 day of September, 1992, hereby

ORDERED, ADJUDGED AND DECREED that as the Court has already declared in its order of July 27, 1992 that SB 1 does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color, nor is SB 1 in contravention of the guarantees set forth in 42 U.S.C. § 1973b(f)(2), SB 1 is precleared pursuant to Section 5 of the Voting Rights Act, 42 U.S.C. § 1973c.